THIS OPINION
 HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN
 ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 
 The State, Respondent,
 
 

v.

 
 
 
 
 John A.
 Barbare, Appellant.
 
 

Appeal From Greenville County
C. Victor Pyle, Jr., Circuit Court Judge

Unpublished Opinion No. 2011-UP-087   
 Submitted November 1, 2010  Filed March
3, 2011

AFFIRMED

 
 
 
 Robert M. Pachak, of Columbia, for
 Appellant.
 Attorney General Alan M. Wilson, Chief
 Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General
 Salley W. Elliott, Assistant Attorney General Julie M. Thames, Office of the
 Attorney General, of Columbia; Robert Mills of Greenville, for Respondent.
 
 
 

PER CURIAM:  John Barbare appeals his conviction for armed
 robbery.  On appeal, Barbare argues the trial court erred (1) by allowing an
 officer to testify to the contents of a surveillance video that was no longer
 available; and (2) by improperly shifting the burden of proof during its jury
 instruction.  We affirm.[1]
FACTS
On
 February 16, 2008, a robbery occurred at the Spinx convenience store in
 Marietta, South Carolina.  Barbare was subsequently arrested and indicted for
 armed robbery. 
At
 trial, Barbare made a motion to exclude any testimony related to the contents
 of the surveillance video on the ground that the State failed to produce the
 video.  According to Barbare, this failure constituted a violation of Rule 5 of
 the South Carolina Rules of Criminal Procedure because the surveillance video contained
 exculpatory evidence.  The State argued the surveillance video did not contain
 any exculpatory evidence based on the ruling of a circuit court judge.  The
 State also argued it should be permitted to discuss the contents of the
 surveillance video if Barbare opened the door to this issue.  The trial court
 did not review the prior judge's ruling regarding the exculpatory nature of the
 surveillance video and granted the State's request to discuss the surveillance
 video contents if Barbare made any references concerning the availability of
 the surveillance video.  
The
 State called several witnesses during its case in chief.  Hoyt Rash, the
 store clerk, testified that Barbare, a regular customer of the store,
 approached the counter and asked for two packs of cigarettes.  Rash indicated
 Barbare pointed a gun at him and stole approximately $140 from the store.
Cheryl
 Shipman, a store customer, testified she heard Barbare tell Rash that he was
 going to shoot Rash if Rash did not open the cash register.  After hearing this
 statement, Shipman hid behind an aisle and heard Barbare arguing with another store
 customer.  Shipman exited the store and called 911.  
Officer
 Brian Osborne of the Greenville County Sheriff's Office (Sheriff's Office)
 reported to the store after the robbery and subsequently conducted a photo
 lineup at the Sheriff's office.  Officer Osborne testified Rash identified
 Barbare as the perpetrator of the armed robbery.  Officer Osborne stated Barbare
 was arrested, waived his Miranda rights, and produced a written
 confession implicating his involvement in the armed robbery.  Officer Matthew
 Owens testified Barbare was coherent and did not appear to be intoxicated or
 under the influence of drugs during his confession.  
On
 cross-examination, Officer Owens answered several questions posed by Barbare
 regarding the surveillance video.  In response, the State recalled Officer
 Osborne to the witness stand to discuss the contents of the surveillance video. 
 Barbare objected and argued Officer Osborne's testimony violated his Sixth Amendment
 right to confront a witness because the State failed to produce the
 surveillance video.  The trial court overruled Barbare's objection and allowed
 Officer Osborne to testify to the contents of the surveillance video. 
After
 the State's presentation of the evidence, Barbare testified in his own defense. 
 Barbare stated he went to the store to purchase cigarettes and beer.  While in
 the store, Barbare stated an intoxicated customer bumped into him and a verbal
 altercation ensued.  After this incident, Barbare testified he became scared
 and upset and did not purchase any items from the store.  Barbare also claimed he
 did not rob the store or confess to the robbery.
The
 jury subsequently convicted Barbare for armed robbery, and the trial court sentenced
 him to twenty years imprisonment.  This appeal followed.  
STANDARD OF REVIEW
In criminal cases, the
 appellate court sits to review errors of law only. State
 v. Martucci, 380 S.C. 232, 246, 669 S.E.2d 598, 605-06 (Ct. App. 2008).  This court is
 bound by the trial court's factual findings unless they are clearly erroneous. State
 v. Baccus, 367 S.C. 41, 48, 625 S.E.2d 216, 220 (2006).  This court
 does not reevaluate the facts based on its own view of the preponderance of the
 evidence but simply determines whether the trial court's ruling is supported by
 any evidence.  State v. Moore, 374 S.C. 468, 473-74, 649 S.E.2d 84, 86
 (Ct. App. 2007).
LAW/ANALYSIS
A. Violation of the Confrontation
 Clause
Barbare argues Officer
 Osborne's testimony regarding the contents of the store's surveillance video
 violated his Sixth Amendment right to confront a witness.  We disagree.
The Confrontation Clause of
 the Sixth Amendment, which was extended to the states by the Fourteenth
 Amendment, guarantees the right of a criminal defendant to confront witnesses
 against him, and this includes the right to cross-examine witnesses.  State
 v. Holder, 382 S.C. 278, 283, 676 S.E.2d 690, 693 (2009).  
During cross-examination, Barbare
 asked Officer Owens several questions about the surveillance videotape. The
 colloquy between Barbare and Officer Owens provides in pertinent part:

 Defense
 Counsel:  You were aware that the Spinx station had a functioning video
 surveillance system?
 Officer
 Owens:  From -- yeah.
 Defense
 Counsel:  And that it was working that night?
 Officer
 Owens:  It could have been.  I don't know.
 Defense
 Counsel:  And could have been viewed?
 Officer
 Owens:  Yeah.
 Defense
 Counsel:  People had viewed the video?
 Officer
 Owens:  Did I view the video?
 Defense
 Counsel:  No.  Other officers viewed the video?
 Officer
 Owens:  I  yeah.
 Defense
 Counsel:  No video was ever obtained?
 Officer
 Owens:  Not from me.
 Defense
 Counsel:  It's not in evidence?
 Officer
 Owens:  Okay.
 Defense
 Counsel:  It's not put into evidence in P&E?
 Officer
 Owens:  I didn't put any video in P&E.

After Barbare's cross-examination
 of Officer Owens, the State recalled Officer Osborne to testify to the contents
 of the surveillance video.  Once Barbare questioned Officer Owens about the
 store's surveillance video, Barbare opened the door to this issue.  We conclude
 the State was permitted to recall Officer Osborne to the witness stand to rebut
 Barbare's cross-examination of Officer Owens' testimony regarding the store's
 surveillance video.  Thus, we discern no error from the trial court's decision in
 allowing Officer Osborne to testify to the contents of the videotape.  See State v. Stroman, 281 S.C. 508, 513, 316 S.E.2d 395, 399 (1984)
 (stating "where one party introduces evidence as to a particular fact or
 transaction, the other party is entitled to introduce evidence in explanation
 or rebuttal thereof, even though [the] latter evidence would be incompetent or
 irrelevant had it been offered initially"). 
B.  Jury Instruction
Barbare also argues the trial
 court's jury instruction violated his right to due process because the trial
 court improperly shifted the burden of proof.  We disagree.
The law to be charged to the
 jury must be determined by the evidence presented at trial.  State v.
 Patterson, 367 S.C. 219, 231, 625 S.E.2d 239, 245 (Ct. App. 2006).  A trial
 court is required to charge only the current and correct law of this state.  Id. 
 A jury charge is correct if it contains the correct definition of the law when
 read as a whole.  Id. at 232, 625 S.E.2d at 245.  Jury
 instructions must be considered as a whole, and if as a whole they are free
 from error, any isolated portions which might be misleading do not constitute
 reversible error.  State v. Smith, 315 S.C. 547, 554, 446 S.E.2d 411,
 415 (1994).  
During the jury
 charge, the trial court stated,

 Ladies
 and gentlemen, I charge you that the State does not have an absolute duty to
 preserve potentially useful evidence that might exonerate a defendant.  To
 establish a due process violation, a defendant must demonstrate, first of all,
 that the State destroyed the evidence in bad faith.  And, secondly, that the
 evidence possessed an exculpatory value apparent before the evidence was destroyed,
 and that the [d]efendant cannot obtain other evidence of comparable value by
 other means.  

Barbare objected to this
 portion of the jury instruction and argued the charge suggested "a
 burden-shifting message."  The trial court's statement that the State does
 not have an absolute duty to preserve potentially useful evidence that might
 exonerate a defendant is a correct pronouncement of the law.  See State
 v. Breeze, 379 S.C. 538, 545, 665 S.E.2d 247, 251 (Ct. App. 2008)
 (stating the State does not have an absolute duty to safeguard potentially
 useful evidence that might vindicate a defendant and that a defendant must
 demonstrate (1) that the State destroyed the evidence in bad faith, or (2) that
 the evidence possessed an exculpatory value apparent before the evidence was
 destroyed and the defendant cannot obtain other evidence of comparable value by
 other means to support a due process claim).  Therefore, we conclude the trial
 court's jury instruction was free from error.  

 CONCLUSION
Accordingly, the trial
 court's decision is
AFFIRMED.
FEW, C.J., SHORT and WILLIAMS, JJ., concur.

[1] We decide this case without oral argument
 pursuant to Rule 215, SCACR.